UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIMS INVESTMENTS, LLC,
etc., et al.,

    Plaintiffs,

v.                          CASE NO. 8:11-CV-1093-T-17TBM

MOSAIC FERTILIZER, LLC,

    Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 12   Motion to Dismiss Counts VI, IX, X, XIII, XIV, XV and XVI of Amended Complaint
Dkt. 13   Opposition

The Amended Complaint (Dkt. 10) in this case includes the following:

| | |
|---|---|
| Count I | Breach of Reclamation Agreement (Untimely Reclamation) |
| Count II | Breach of Settlement Agreement (Failure to Transfer Permits) |
| Count III | Breach of Transfer Agreement (Failure to Transfer Permits) |
| Count IV | Breach of Settlement Agreement (Untimely Reclamation) |
| Count V | Breach of Transfer Agreement (Improper Objection to Land Use Change) |
| Count VI | Breach of Covenant of Good Faith and Fair Dealing Of Settlement Agreement (Section 7) (Failure to Release Control Area Easement) |
| Count VII | Breach of Settlement Agreement (Section 8) |
| Count VIII | Breach of Settlement Agreement (Section 9) |

Case No. 8:11-CV-1093-T-17TBM

| | |
|---|---|
| Count IX | Breach of Covenant of Good Faith and Fair Dealing of the Settlement Agreement (Section 10) (Untimely Reclamation) |
| Count X | Breach of Covenant of Good Faith and Fair Dealing of the Settlement Agreement (Section 12) (Failure to Transfer Sand Deed) |
| Count XI | Breach of the Agreement to Transfer/Exchange Properties (Section 15) (Untimely Reclamation) |
| Count XII | Breach of the Agreement to Transfer/Exchange Properties (Section 1) |
| Count XIII | Trespass (In Control Area Easement) |
| Count XIV | Trespass (Outside Control Area Easement) |
| Count XV | Tortious Interference |
| Count XVI | Negligent Misrepresentation |

In Counts I through X, Plaintiffs seek a judgment for damages, including attorneys' fees and costs. In Counts XI and XII, Plaintiffs seek a judgment for damages, including costs. In Counts XIII, XIV, XV, and XVI, Plaintiffs seek a judgment for compensatory and punitive damages, including costs, and any other appropriate relief.

I. Background

Plaintiffs Mims Investments, LLC ("MI"), Mims Properties, LLC ("MP"), Mims Properties Investments, LLC ("MPI") and Nichols Ranch, LLC ("NR") and IMC Phosphates Company entered into a Reclamation, Mitigation and Enhancement Agreement ("Reclamation Agreement") (Dkt. 10-1, Exh. A) on December 2, 2002. The Reclamation Agreement provided that certain reclamation activities would be completed within a certain period of time. Some of the deadlines were modified by Defendant Mosaic Fertilizer, LLC in Defendant's Minor Modification of Reclamation Plan AGR-N-CPG, dated March 28, 2006. The reclamation plan became known as MOS-N-CPH upon approval dated July 25, 2008 (Dkt. 10-2, Composite Exhibit B).

Case No. 8:11-CV-1093-T-17TBM

In April, 2006, Plaintiff Mims Hammocks, LLC ("MH"), NR and MP entered into an Agreement with Defendant Mosaic Fertilizer, LLC to transfer/exchange properties ("Transfer Agreement")(Dkt. 10-3, Exhibit C).

In Case No. 8:05-CV-3371-T-26EAJ, Mims/Alafia, LLC v. Mosaic Fertilizer, LLC, a final judgment in the amount of $5,450,000 in favor of Plaintiff and against Defendant in 2007 was entered . The dispute was settled, and the parties entered into a Settlement Agreement ("Closing Agreement")(Dkt. 10-4, Exhibit D).

II. Standard of Review
A. Fed. R. Civ. P. 8(a)(2)

Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For purposes of this analysis, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (quoting Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n. 1 (11th Cir.1999)).

B. Fed. R. Civ. P. 12(b)

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id., at 570.  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.  Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as

Case No. 8:11-CV-1093-T-17TBM

true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

C. Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires that, for complaints alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. Garfield 466 F.3d at 1262; Ziemba v. Cascade International, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). Notably, the "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir.2005) (per curiam).

4

Case No. 8:11-CV-1093-T-17TBM

III. Discussion

Defendant Mosaic Fertilizer, LLC moves to dismiss Counts VI, IX, X, XIII, XIV, XV and XVI, pursuant to Fed. R. Civ. P. 8(a)(2), 9(b) and 12(b)(6).

Plaintiffs oppose Defendant's Motion.

A. Count VI - Breach of Covenant of Good Faith and Fair Dealing as to Section 7
of Settlement Agreement(Failure to Release Control Area Easement)
Count IX - Breach of Covenant of Good Faith and Fair Dealing as to Section 10 of
Settlement Agreement (Untimely Reclamation)
Count X - Breach of Covenant of Good Faith and Fair Dealing as to Section 12 of
Settlement Agreement (Failure to Transfer Sand Deed)

Defendant argues that Plaintiffs have not alleged sufficient facts to raise facially plausible claims. Defendant argues that Plaintiffs have made conclusory allegations, which the Court should not assume to be true, in the absence of sufficient facts. Defendants further argue that when the exhibits to a pleading contradict the general and conclusory allegations of the pleading, the exhibits govern. Defendants argue that the covenant of good faith and fair dealing requires not only an allegation that a specific contractual provision has been breached and caused damage, but also that:

> "the failure to perform must not be "by honest mistake, bad judgment or negligence; but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party [of] the benefits of that agreement."

Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F.Supp.2d 1350, 1359 (M.D. Fla. 2007).

Plaintiffs respond that Plaintiffs need only allege that Defendant failed to perform

5

Case No. 8:11-CV-1093-T-17TBM

an express contractual duty, and that it acted in bad faith by failing to perform. Plaintiffs argue that bad faith encompasses conscious wrongdoing for a dishonest purpose. Espirito Santo Bank v. Agronomics Fin. Corp., 591 So.2d 1078, 1080 (Fla. 3d DCA 1991).

As to Count VI, Plaintiffs argue that Section 7 of the Settlement Agreement requires Defendant Mosaic to deliver a Release when it completes all earth moving operations. Plaintiffs allege that Defendant has breached the covenant of good faith and fair dealing by failing to deliver the Release and by engaging in a pattern of delay designed to stall the delivery of the Release despite contractual deadlines.

As to Count IX, Plaintiffs allege that Section 10 of the Settlement Agreement required Defendant to complete reclamation of designated areas in accordance with certain time frames. Plaintiffs further allege that to date reclamation is not complete and that Defendant has engaged in a pattern of delay designed to stall reclamation.

As to Count X, Plaintiffs allege that Florida Sand and Fill, LLC ("FSF") is a third party beneficiary under the Settlement Agreement. Section 12 of the Settlement Agreement required Defendant to execute and deliver quit-claim deeds to FSF after Defendant completes reclamation activities. Plaintiffs allege that Defendant breached the duty of good faith by failing to complete reclamation activities as required and by engaging in a pattern of delay designed to stall the delivery of the deeds,

Florida law recognizes the implied covenant of good faith and fair dealing. The implied covenant "imposes on each party the duty to do nothing destructive of the other party's right to enjoy the fruits of the contract and to do everything that the contract presupposes they will do to accomplish this purpose. Scheck v. Burger King Corp., 798 F.Supp. 692 (S.D. Fla. 1992).

Case No. 8:11-CV-1093-T-17TBM

The Court notes that:

> [T]he doctrine of good faith performance imposes a limitation on the exercise of discretion vested in one of the parties to a contract...In describing the nature of that limitation courts of this State have held that a party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

Dayan v. McDonald's Corp. 466 N.E.2d 958, 972 (1984).

Plaintiffs have attached the parties' numerous Agreements to the Complaint. The Court assumes that Plaintiffs' allegation of "bad faith" refers to Defendant's requests for extension of reclamation deadlines to the Florida Department of Environmental Protection.

The Court finds that Plaintiffs have sufficiently identified the contractual provisions which form the basis of Plaintiffs' claims. After consideration, the Court **denies** the Motion to Dismiss as to this issue.

B. Count XIII - Trespass (In Control Area Easement)
   Count XIV - Trespass (Outside Control Area Easement)

To state a claim for trespass under Florida law, a complaint must plausibly allege facts indicating "an unauthorized entry onto another's property." Coddington v., Staab, 716 So.2d 850, 851 (Fla. 4th DCA 1998). Pursuant to Garden Street Iron & Metal, Inc. v. Tanner, 789 So.2d 1148, 1150 (Fla. 2d DCA 2001), "the landowner's cause of action for trespass accrues when he retracts his permission for the use of the property." Defendants argue that Plaintiffs do not allege plausible claims for trespass because the Exhibits attached to the Amended Complaint establish Defendant Mosaic's right of

entry on the properties.

Defendant argues that the Exhibits to the Amended Complaint establish that Defendant had express permission to enter the subject properties to perform certain reclamation activities, and the temporary easement was to terminate as to each reclamation area upon Mosaic's completion of all reclamation activities...and the formal release of the affected lands by all applicable county, state and federal agencies...(Dkt. 10, Exh. F at 3). The Transfer Agreement states that "the easement shall provide it will remain in effect until issuance of a release from reclamation requirements by all applicable governmental agencies. (Exh. C. at 9.)

Defendant argues that the Agreements attached as Exhibits A and C grant permission to Defendant to enter the properties, and Plaintiffs do not allege that the applicable releases have been issued.

Defendant seeks the dismissal of the above Counts with prejudice, as amendment would be futile.

Plaintiffs respond that, to state a claim for trespass, Plaintiffs must allege "an ownership or possessory interest in the property at the time of the trespass," and that a defendant entered Plaintiffs' property without permission, thereby depriving Plaintiffs of the use of the property. Plaintiffs argue that the Amended Complaint alleges that Plaintiffs are the fee simple owner of the property on which Defendant Mosaic is conducting mining reclamation activities, and Defendant Mosaic has a limited and conditional right to perform the reclamation activities. Defendant Mosaic's permission to perform reclamation activities is limited to the terms of the Reclamation Agreement, the Settlement Agreement and the Termination and Release of Control Area Easement Agreement. Plaintiffs argue that the Amended Complaint alleges that Defendant Mosaic exceeded the scope of the permission by failing to complete the

Case No. 8:11-CV-1093-T-17TBM

reclamation in a timely manner, and that Plaintiffs suffered damages as a result of Defendant Mosaic's trespass.

Plaintiffs argue that, while the Exhibits demonstrate that Defendant Mosaic had express permission to be on the land, and while consent can be a defense to a trespass action, consent implied from "custom, usage, or conduct is necessarily limited to those acts that are within a fair and reasonable interpretation of the terms of the grant." Plaintiffs argue that Plaintiffs withdrew permission by the express terms of the controlling agreements that limited Defendant's permission to be on the land. Plaintiffs rely on Tice v. Herring, 717 So.2d 181, 182 (Fla. 2d DCA 1998)(use of easement in manner exceeding scope of easement states claim for trespass).

1. Inside Control Area Easement

In Count XIII, Plaintiffs allege that Defendant Mosaic has not completed reclamation activities in accordance with the Reclamation Agreement and/or MOS-N-CPH for N-Tm(3), N-BB(2) A&B, N-BB(3), N-BB(4), N-NPA(8), and SP(4B). Plaintiffs further allege that Defendant Mosaic has not completed reclamation in accordance with the dredge and fill permit (Permit No. 0140610-007) which expired on October 25, 2009. Plaintiffs allege that in no event was the reclamation of Defendant Mosaic's mining activities to be completed later than two years after completion of the mining activities as required by F.A.C. 62C-16.

Plaintiffs further allege that "At all times since the reclamation activities were to be completed, and in accordance with the Settlement Agreement, Mosaic should have released any easements associated with its reclamation activities. Mosaic has no right to occupy or use the property except as expressly granted by Mims within the Termination and Control Area Easement.

Case No. 8:11-CV-1093-T-17TBM

The Closing Agreement includes the parties' agreements as to post-closing obligations relating to a Memorandum of Understanding dated 10/16/2007 which memorialized the parties' agreements to carry out certain transactions. The Closing Agreement includes:

1) the conveyance of certain properties from Mosaic to Plaintiffs (Par. 2);

2) indemnification agreements (Par. 3);

3) agreement as to 2008 real estate taxes (Par. 4);

4) agreement as to Parcel AA (Par. 5);

5) agreement for resolution of title exceptions (Par. 6);

6) agreement as to effective date of Termination and Release of Control Area Easement Agreement, and holding Termination in escrow (Par. 7);

7) agreement to cooperate to resolve hydrology issues relating to Control Area Easement (defined in Termination), to include certain crossings in the agreed Conceptual Reclamation Plan for which the parties were seeking approval from the Florida Department of Environment Protection, ("FDEP Plan") which upon approval is incorporated in the Closing Agreement, agreement that Mosaic shall complete all reclamation required under the FDEP Plan, that upon completion of all reclamation and release of Mosaic by FDEP from further reclamation obligations, Plaintiffs shall assume full responsibility for all aspects of agreed-upon hydrology on the site, agreement that upon Plaintiffs' assumption, Mosaic and all affiliates are deemed automatically released from all claims arising from or related to the hydrology on the site, agreement to indemnify the Released Parties, to be self-operating upon release of Mosaic by FDEP (Par. 8);

8) agreement that Mosaic shall provide Plaintiffs with maps, topographical maps, aerials, Conceptual Reclamation Plan, and hydrology studies on permits, but excluding GIS, and timetable (Par. 9);

9) agreement that Mosaic shall perform all reclamation required by FDEP in area designated in Exhibit B to the Agreement, complying with all FDEP requirements in the "Mosaic-AGF-CPG Plan" and Plaintiffs shall perform

10

reclamation as to remaining areas except for drainage ditch installed across SP(4)-B area (Par. 10);

10) agreement of Mosaic to comply with and perform all monitoring, maintenance and mitigation obligations required as to Parcel HH until the Florida Department of Environment Protection has released Parcel HH from the Agreement of 9/29/1999, Plaintiffs' agreement to cooperate in the event of a request by Mosaic for modification providing there is no adverse effect on the non-wetland areas on Parcel HH, Mosaic's agreement to indemnify Plaintiffs arising from or caused in whole or in part, directly or indirectly by Mosaic's failure to perform its obligations under the Covenant as to Parcel HH (Par. 11);

11) agreement of Mosaic that upon completion of all required reclamation activities by Mosaic as to the "Sand Agreement Property" as described in the Quit-Claim Deed attached to the Agreement, Mosaic shall execute and deliver to Florida Sand and Fill, LLC a further quit-claim deed conveying all of Mosaic's rights, title and interest reserved in the Sand Agreement Deed with respect to the Sand Agreement property (Par. 12).

The Closing Agreement incorporates the Termination and Release of Control Area Easement Agreement. In the Termination and Release of Control Area Easement Agreement, Mosaic relinquished to Plaintiffs all right, title and interest Mosaic had to the Control Area Easement, which had been granted to Mosaic by Agreements dated 12/3/2002 and 9/1/2006. Plaintiffs granted to Mosaic a temporary access easement over, across and through the Control Area so that Mosaic could carry out required reclamation activities, discharge surface water, and plant required vegetation. (Dkt. 10-4, Sec. 4(a). The Court notes that Sec. 4(a) provides:

> Mosaic shall have the sole discretion regarding the manner, method, and conduct of its reclamation activities within the Control Area, subject to compliance with applicable Laws.

The temporary easement terminates as to each reclamation program area upon Mosaic's completion of all reclamation activities with respect to the reclamation program area and the formal release of the affected lands by all applicable county, state and

Case No. 8:11-CV-1093-T-17TBM

federal agencies having jurisdiction over the activities, including the Bureau of Mine Reclamation. The Agreement provides that the temporary easement shall terminate automatically upon completion and the formal release.

The Termination and Release of Control Area Easement Agreement of 4/21/2008 provides that the Control Area Easement is cancelled and shall have no further force or effect after the date of the Agreement. The Closing Agreement provides that the Termination of the Control Area Easement shall not be effective until Mosaic has completed all earth-moving operations in connection with its reclamation activities, and the Termination shall be held in escrow until Mosaic's completion of all earth-moving operations. The Agreement requires that, upon completion of all earth-moving operations under the Control Area Easement in connection with the reclamation activities, Mosaic shall notify the Title Company to release the Termination to Plaintiffs for recordation in Polk County, FL.

On July 25, 2008, the Florida Department of Environmental Protection took final agency action on Mosaic's application for approval of a modification to an approved conceptual plan for the Nichols Mine in Hillsborough and Polk Counties, Florida, designated MOS-N-CPH (Dkt. 10-7, pp. 2-13). The purpose of Mosaic's request was to alter the post-reclamation land use, and post-reclamation topology, and to update the mine acreage. The Conceptual Plan Modification applies to the reclamation obligations of Mosaic within the following reclamation parcels (involving 6733 acres):

AGF-N-TM(2)
AGF-N-BB(2)
AGF-N-BB(3)
AGF-N-BB(4)
AGF-N-SP(2)
AGF-N-SP(4B)-B

Case No. 8:11-CV-1093-T-17TBM

    AGF-N-SP(5)

    AGF-N-NPA(8)

    AGF-N-3

The Court notes that "Any person whose substantial interests are affected by the Department's action may petition for an administrative hearing under Ch. 120.569 and 120.57, Florida Statutes. The failure of any person to file a petition for an administrative hearing within the appropriate time constitutes a waiver of the person's right to request an administrative determination. (Dkt. 10-7, p. 8)." Plaintiffs do not allege that Plaintiffs sought review of the decision of the Department of Environmental Protection.

On July 17, 2009, Mosaic requested an extension of the completion date for reclamation activities on AGF-N-SP-5 until 12/31/2014 from the Florida Department of Environmental Protection (Dkt. 10-5, p. 2), based on Southwest Florida Water Management District's request to Mosaic that Mosaic consider Alternative Water Supply reservoirs on lands formerly used for waste clay disposal.

The timeline extension was approved by the Florida Department of Environmental Protection on July 24, 2009 as follows (Dkt. 10-5, p. 3):

    AGF-N-SP-5/N5 CSA

| | |
|---|---|
| Complete Mining Operations | November 2014 |
| Initiate Earth-Moving | December 2014 |
| Complete Earth-Moving | June 2016 |
| Initiate Revegetation | July 2016 |
| Complete Revegetation | January 2017 |

Southwest Florida Water Management District requested and obtained an extension of the beginning date for reclamation as to AGF-N-SP(5), deferring the

Case No. 8:11-CV-1093-T-17TBM

beginning date to December 31, 2015. On December 29. 2009, Mosaic requested an extension of the beginning dates for reclamation of Reclamation Parcels AGF-N-SP(2) and Guy Branch Enhancement, beginning December 31, 2015 from the Florida Department of Environmental Protection (Dkt. 10-5, p. 5), as the two projects are directly associated with the deferred parcel AGF-N-SP(5), and necessary for managing and maintaining water quality through the reclamation of SP(5).

Plaintiffs do not allege that Plaintiffs sought administrative review of the decision of the Department of Environmental Protection to grant the additional extension.

The Court understands the substance of Plaintiffs' claim to be that Plaintiffs have plans to establish a business on land on which Defendant is conducting reclamation activities, and Defendant is taking too long to complete the reclamation activities. The Closing Agreement requires Defendant Mosaic to complete all reclamation required by the "FDEP Plan." The applicable laws to which Defendant Mosaic is subject provide procedures for modifying time deadlines for completing reclamation activities. The attachments to the Amended Complaint establish that Defendant Mosaic has sought and obtained extensions of time to complete reclamation activities from the Florida Department of Environmental Protection. The Closing Agreement and incorporated Termination and Release of Control Access Agreement do not spell out that all reclamation activities must be completed by a date certain. In addition, the Termination and Release of Control Access Agreement provides that Defendant Mosaic has sole discretion regarding the manner, method and conduct of its reclamation activities within the Control Area, subject to compliance with applicable laws. Plaintiffs granted Defendant Mosaic a temporary access easement and it is not clear to the Court when Plaintiffs withdrew consent for Defendant Mosaic to complete the reclamation activities contemplated at the time the Closing Agreement was entered into.

14

Case No. 8:11-CV-1093-T-17TBM

After consideration, the Court **grants** the Motion to Dismiss as to this issue, with leave to file an amended complaint which states when Plaintiffs' withdrew their consent for Defendant's presence.

2. Outside Control Area Easement
   Lands in Section 27, Township 30 South, Range 23 East, Polk County, FL

In Count XIV, Plaintiffs allege that Defendant's predecessor, IMC Phosphates Company, executed a Warranty Deed to Agrifos Mining, LLC, transferring certain property and retaining certain water rights, ingress and egress rights, and maintenance easements which expired automatically on September 15, 2004 (Dkt. 10-8, p. 2).

Plaintiffs further allege that Agrifos executed a Fee Simple Deed transferring the Warranty Deed to Plaintiff Mims Properties, LLC (Dkt. 10-8, p. 9).

Plaintiffs allege that Defendant Mosaic's right to occupy and use the property is a limited and conditional right which ended on September 15, 2004, and any consent to occupy or use the property has been withdrawn by the express terms of the Deed. Plaintiffs allege that Defendant Mosaic continues to occupy and use the property in a manner inconsistent with Plaintiffs' rights, the actions of Defendant Mosaic constitute intentional misconduct are in conscious disregard of the rights of Mims Properties, LLC.

After consideration, the Court **denies** Defendant's Motion to Dismiss as to this issue.

C. Count XV - Tortious Interference

To state a claim for tortious interference, Plaintiffs must allege: 1) the existence of a business relationship under which the plaintiff has legal rights; 2) an intentional and unjustified interference with that relationship by the defendant, and 3) damage to the

15

Case No. 8:11-CV-1093-T-17TBM

plaintiff as result of the breach of the business relationship. See Ethyl Corp. v. Balter, 386 So.2d 1220, 1223 (Fla. 3d DCA 1980). There is no cause of action for interference which is only negligently or consequentially effected. Id, at 1224.

Defendant argues that the Amended Complaint does not allege any facts establishing a business relationship under which Plaintiffs currently have any legal rights, and Plaintiffs merely speculate regarding possible future transactions. Defendant further argues that Plaintiffs do not allege any plausible facts that Defendant intended to interfere with Plaintiffs' future business plans, and Defendant is the source of any future business opportunities because it is the party that sold Plaintiffs the properties, and it is the party performing reclamation activities on the properties for Plaintiffs' benefit.

Defendant seeks dismissal of this Count with prejudice, as amendment would be futile.

Plaintiffs respond that the Amended Complaint alleges that three entities have a business relationship to develop a landfill and recycling processing plant on a specific parcel of land "EE". (Dkt. 10, par. 108), that Defendant knew of the business plan, and interfered with the relationship when Defendant did not provide Plaintiffs with the documents necessary to move forward with the business plan for the plant (topographical maps, etc.) and by Defendant's failure to file the documents necessary to transfer the SWFWMD permit to Plaintiffs. Plaintiffs argue that the Amended Complaint alleges that Defendant's actions were intentional, willful and/or in conscious disregard to Plaintiffs' rights, which damaged Plaintiffs.

The Court notes that the thwarted business relationship need not be evidenced by an enforceable contract. If the "business plan" would have been realized in the absence of the alleged interference, an action for tortious interference is appropriate.

Case No. 8:11-CV-1093-T-17TBM

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

D. Count XVI - Negligent Misrepresentation

To state a claim for negligent misrepresentation, Plaintiffs must allege facts establishing: 1) misrepresentation of a material fact; 2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; 3) that the representor intended that the misrepresentation induce another to act on it; and 4) the injury resulted to that party acting in justifiable reliance on the misrepresentation. Wallerstein v. Hosp. Corp. of Am., 573 So.2d 9, 10 (Fla. 4th DCA 1990).

Defendant argues that Plaintiffs do not allege a plausible claim for negligent misrepresentation because Plaintiffs do not allege how Defendant intended to induce Plaintiffs to act on the purported misrepresentation.

Defendant further argues that Plaintiffs have not plead: 1) precisely what statements were made in what documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making, or, as to omissions, not making, the statement, and 3) the content of such statements, and the manner in which they misled the plaintiff, and 4) what the defendants obtained as a consequence of the fraud." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1264, 1371 (11th Cir. 1997). Defendant argues that Plaintiffs have included allegations in the Amended Complaint as to who purportedly made the allegations, when the alleged misrepresentations were generally made and to whom they were made, but do not allege the place, how the alleged misrepresentations misled Plaintiffs, or what Defendant gained from the alleged misrepresentations.

Defendant seeks dismissal of this Count with prejudice, as amendment would be

17

Case No. 8:11-CV-1093-T-17TBM

futile.

The Court has examined the allegations of the Amended Complaint. Plaintiffs allege that Ron Hall and Jeff Dodson made oral misrepresentations in "Spring of 2008" to William Thomas Mims and Mike Cotter that all wetlands on Parcel EE, Reclamation Program IMC-KC-BB(1) and uplands on Parcel EE, IMC-KC-HP-4 had been released by Florida's Bureau of Mining and Minerals Regulation.

The Court takes the allegations to mean that both Ron Hall and Jeff Dodson made the oral misrepresentations. If that is not the case, Plaintiffs should specify who said what. The Court takes "Spring of 2008" to mean March, April and May, 2008. Plaintiffs have not indicated where the misrepresentations were made. If the misrepresentations were false then William Thomas Mims and Mike Cotter, representatives of Mims/Alafia LLC were falsely led to believe that the wetlands and uplands had been released by the Florida Bureau of Mining and Minerals Regulation, which, under Termination and Release of Control Area Easement Agreement, Par. 4(b), would signify that Defendant had completed all reclamation activities with respect to the referenced areas, such that the temporary easement granted to Defendant would become unnecessary and would have terminated. Plaintiffs allege that Plaintiffs reasonably relied to Plaintiffs' detriment on the misrepresentations in pursuing the development of a landfill and recycling processing plant on Parcel EE. Plaintiffs do not allege that Defendant gained from the alleged misrepresentations.

After consideration, the Court **grants** Defendant's Motion to Dismiss as to this issue, with leave to file an amended complaint within fourteen days. Plaintiffs shall allege how Defendant intended to induce Plaintiffs to act on the alleged misrepresentations, where the alleged misrepresentations were made, and what Defendant gained from the alleged misrepresentations. Accordingly, it is

Case No. 8:11-CV-1093-T-17TBM

**ORDERED** that Defendant's Motion to Dismiss is **granted** in part and **denied** in part, with leave to file an amended complaint within fourteen days.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 12 day of December, 2011

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record