UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIMS INVESTMENTS, LLC,
etc., et al.,

       Plaintiffs,

v.                         CASE NO.  8:11-CV-1093-T-17TBM

MOSAIC FERTILIZER, LLC,
etc.,

       Defendant.

_____/

ORDER

This cause is before the Court on:

   Dkt.  27   Motion to Dismiss Counts XIII and XVI of the Second
                    Amended Complaint
   Dkt. 28   Opposition

The Court previously granted a Motion to Dismiss Counts XII and XVI, with leave
to file an amended complaint. (Dkt. 23).

I.  Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short
and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed
factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007),
but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face," Id., at 570.   A claim has facial plausibility when the
pleaded factual content allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged. Id., at 556.  Two working principles

Case No. 8:11-CV-1093-T-17TBM

underlie <u>Twombly</u>.  First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. <u>Id.</u>, at 555.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. <u>Id.</u>, at 556.  A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1955-1956 (2009)(quoting <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007).

II.  Discussion

        Plaintiffs attached a series of Exhibits to the Amended Complaint, which are considered a part of the Amended Complaint for all purposes.  Resolution of this Motion requires the Court to consider the provisions of the Closing Agreement dated April 21, 2008  (Dkt. 25-4), which documents the parties post-closing obligations after closing certain transactions described in a Revised Memorandum of Understanding dated October 16, 2007 (the "MOU") with respect to the settlement of certain litigation.  The Closing Agreement is an integrated agreement, and is to be interpreted, enforced and governed by Florida law.  (Dkt. 25-4, p. 9, pars. 14, 16).  The Closing Agreement provides:

                7.  With respect to paragraph 2 of the MOU, Mims and
                Mosaic have entered into that certain Termination and
                Release of Control Area Easement Agreement, a copy of
                which is attached hereto as Exhibit "A" and incorporated as a
                part hereof (the Termination").  The parties have agreed that

2

Case No. 8:11-CV-1093-T-17TBM

> (i) the Termination shall not be effective until Mosaic has completed all earth-moving operations in connection with its reclamation activities hereunder, and (ii) the Termination shall be held in escrow by the Title Company until such time as such earth-moving operations have been completed. Upon the completion of all earth-moving operations under the Control Area Easement in connection with the reclamation activities, Mosaic shall notify the Title Company in writing and authorize the Title Company to release the Termination to Mims/Alafia for recordation in Polk county, Florida, at Mims' expense....
>
> ....
>
> 8.  With respect to Paragraph 8 of the MOU, the parties agree that Mosaic shall perform, at its sole expense, all reclamation required by the FDEP in the area described as being Mosaic's responsibility on Exhibit "B" attached hereto and incorporated as a part hereof (the "MOU Section 8 Plan").  Such reclamation shall comply with all FDEP requirements as contained in the FDEP-approved "Mosaic - AGF-CPG" plan.  Mims shall be responsible, at its sole expense, for all reclamation obligations on the remaining areas shown on the MOU Section 8 plan that are not specifically designated thereon as Mosaic's responsibility, except that Mosaic shall also be responsible for the reclamation of the drainage ditch they installed across the SP(4)-B area pursuant to that Agreement to Transfer/Exchange Property dated April 25, 2006, as amended, by and among Mims and Mosaic.

The Termination and Release of Control Area Easement, Quit-Claim Regarding Control Area, and Grant of Temporary Access Easement (Dkt. 25-6) is an agreement between Plaintiffs and Defendant dated April 21, 2008 in which Mims and Mosaic agreed to terminate the Control Area Easement, a recorded easement granted to IMC Phosphates Company in an Agreement dated 12/3/2002 by Agrifos Mining, L.L.C. and Bedrock Holdings, L.L.C.  Mims is the current property owner of the Control Area, and Mosaic is the successor to IMC.  The Termination and Release provides:

3

Case No. 8:11-CV-1093-T-17TBM

2. <u>Termination of the Easement Agreements/Quit-Claim</u>.  Mims and Mosaic hereby terminate and cancel the Control Area Easement and the Control Area Easement shall have no further force or effect as of or at any time after the date hereof.  Mosaic does hereby remise, release, quit-claim and relinquish until Mims/Alafia, LLC all right, title and interest that Mosaic may have in and to the Control Area Easement, as well as the control Area, and, to the extent all or any portion of the Facility Easement is owned by Mims (or any of the entities comprising Mims) to the Facility Easement and any right, title or interest Mosaic may have in and to the Facility Easement....

.....

4.  <u>Access to Wetlands and Control Area</u>.  Notwithstanding the Release and Termination provided herein, Mosaic desires to access the Control Area to complete reclamation activities.  Accordingly, Mosaic has requested from Mims a temporary access easement.  Mims has agreed to grant the temporary access easement as provided in this Section:

(a) Mims hereby grants, bargains, sells and conveys to Mosaic, its successors and assigns, a non-exclusive easement over, across and through the Control Area for purposes of provided Mosaic with ingress and egress for pedestrian and vehicular traffic over the Control Area so that Mosaic may (i) undertake, complete and perform all land reclamation activities required by applicable county, state and federal laws, ordinances, regulations, codes, orders and other governmental and quasi-governmental requirements (collectively, "Laws") with respect to the Control Area (ii) discharge surface water during active reclamation, and (iii) plant, grow and establish such vegetation as may be required under applicable Laws.  Mosaic shall have the sole discretion regarding the manner, method and conduct of its reclamation activities, subject to compliance with applicable laws.

(b) The temporary easement granted hereby shall terminate as to each reclamation program area upon Mosaic's completion of all reclamation activities with respect such [sic] reclamation program area and the formal release of the affected lands by all applicable county, state and federal agencies having jurisdiction over such reclamation activities, including, without limitation, the Bureau of Mine Reclamation ("Termination Date").  Notwithstanding that the temporary easement shall terminate automatically as provided herein, Mosaic, at the request of Mims on or

4

Case No. 8:11-CV-1093-T-17TBM

after each Termination Date shall execute a termination of easement in recordable form at no cost to Mims.

(c) Mosaic shall indemnify, defend, protect and hold Mims free and harmless from and against all claims, actions, causes of actions, liabilities, losses or expenses (collectively "Loss") arising from or caused in whole or part, directly or indirectly, by Mosaic's use of the Control Area, or failure to perform reclamation obligations in the control Area or exercise of its easement rights hereunder, except where such Loss arises out of or is incident to the gross negligence of Mims.

A.  Principles of Florida Contract Law

     The well-established principle in the Eleventh Circuit is that contract interpretation is generally a question of law. Lawyers Title Insurance Corp. v. JDC (America) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995) (affirming summary judgment in declaratory action involving interpretation of coverage provisions of insurance policy).  The interpretation or construction of a written contract is particularly suitable for summary judgment. Central National Bank v. Palmer, 806 F.Supp. 253, 256 (M.D. Fla. 1992).  Questions of fact arise only if there is an ambiguity in a contract term.  Lawyers Title, 52 F.3d at 1580.  An ambiguity does not exist merely because a contract can be interpreted in more than one manner. Id.   However, if there is a genuine inconsistency, uncertainty or ambiguity in meaning after resort to ordinary rules of construction under applicable state law, then an ambiguity exists.  Id.  For instance, an ambiguity exists if a contract contains conflicting or repugnant clauses.  In Re Finevest Foods, 159 B.R. 972, 978 (Bankr. M.D. Fla. 1993).

     Under the parol evidence rule, evidence of prior or contemporaneous oral statements or agreements cannot be introduced to vary, contradict or affect the unambiguous language of a valid contract.  Johnson Enterprises of Jacksonville, Inc. v. FPL Group, 162 F.3d 1290, 1308 (11th Cir. 1998).  With an unambiguous contract, the best evidence of the parties' intentions is the actual language used in the contract. See

5

Case No. 8:11-CV-1093-T-17TBM

In re Atkins, 228 B.R. 14, 18 (Bkrtcy. M.D. Fla. 1998).  Subsequent oral statements or actions of parties to ascertain their intent in entering into a contract should be considered only if a contract is ambiguous. See In re Yarn Processing Patent Validity Litigation, 462 F.Supp. 340 (S.D. Fla. 1978).

As recognized by the Eleventh Circuit in Johnson Enterprises, one way in which parties to a contract demonstrate their intent that the written contract incorporate their final and complete agreement, such that evidence of prior or contemporaneous agreements is not admissible to contradict the terms of the contract, is through the use of a merger or integration clause. Johnson Enterprises, 162 F.3d at 1308.

Parol evidence may be admitted to show that an oral agreement induced the signing of a written contract, or to explain a latent ambiguity in a written contract.  The inducement exception requires that the oral agreement be shown by evidence that is clear, precise and indubitable.  Johnson Enterprises, 162 F.3d at 1310.

B.  Preliminary Issue

In the Second Amended Complaint, in Count XIII, Trespass (In Control Area Easement) Plaintiffs allege that Plaintiffs own the property on which Mosaic continues to conduct reclamation activities, and that Mosaic was obligated to timely complete earth-moving activities in accordance with Mosaic's permits, FAC 62C-16, the Reclamation Agreement, the Settlement Agreement, and MOS-N-CPH.  Plaintiffs further allege that the latest deadline for completion of earth-moving under the Reclamation Agreement and/or MOS-N-CPH for N-TM(3), N-BB(2) A & B, N-BB(4), N-NPA(8), SP(4B) was June, 2008.  Plaintiffs allege that Plaintiffs' consent for Mosaic to occupy and use the property was withdrawn in accordance with the Settlement Agreement (Closing Agreement) when the June 2008 deadline passed.

6

Case No. 8:11-CV-1093-T-17TBM

The Closing Agreement includes the agreement of Mims and Mosaic that the Termination and Release Agreement shall not be effective until Mosaic has completed all earth-moving operations under the Control Area Easement.   The Court's duty to accept all well-pleaded factual allegations as true does not require the Court to ignore specific factual details of the pleading in favor of general or conclusory allegations. When the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.  Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007)(citing Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974).  The Court accepts Plaintiffs' allegation that Defendant Mosaic has not completed all earth-moving operations.  Therefore, the Termination and Release of Control Area Easement has not become effective, pursuant to the Closing Agreement's unambiguous term.

C.  COUNT XIII - Trespass

To state a claim for trespass under Florida law, a complaint must plausibly allege facts indicating "an unauthorized entry onto another's property."  Coddington v. Staab, 716 So.2d 850, 851 (Fla. 4th DCA 1998).  Pursuant to Garden Street Iron & Metal, Inc. v. Tanner, 789 So.2d 1148, 1150 (Fla. 2d DCA 2001), "the landowner's cause of action for trespass accrues when he retracts his permission for the use of the property."

Defendant Mosaic argues that Plaintiffs have not alleged when the Termination Agreement became effective, have not explicitly alleged when Plaintiffs withdrew their consent for Defendant's presence, have not alleged that Plaintiffs withdrew Mosaic's authority under the Control Area Easement to enter the Control Area, and have not alleged how Mosaic purportedly exceeded its discretion in conducting reclamation activities.

Plaintiffs respond that Plaintiffs complied with the Court's Order by the inclusion

Case No. 8:11-CV-1093-T-17TBM

of the following paragraphs:

97.  The latest deadline for completion of earth-moving under the Reclamation Agreement and/or MOS-N-CPH for N-TM(3), N-BB(2) A&B, N-BB(4), N-NPA(8), SP(4B) was June 2008.

98.  MPI, M/A, MP and NR's consent for Mosaic to occupy and use the property beyond the very limited temporary rights granted in the Release was withdrawn in accordance with the Settlement Agreement when the June 2008 deadline passed.

Paragraph 16 of the Closing Agreement provides:

16.  This Closing Agreement constitutes the entire and complete agreement between the parties hereto and supersedes any prior oral or written agreements between the parties with respect to the matters set forth herein, including, without limitation, the MOU.  The parties further acknowledge that all of the terms, provisions, obligations, and requirements contained in the MOU have been satisfied, except for the specific obligations of the parties set forth in this Closing Agreement and the other documents being executed by the parties at the closing (including any documents being held in escrow).

Plaintiffs and Defendant agreed that the Termination and Release of Control Area Easement would not become effective until Defendant Mosaic completed earth-moving operations, which Plaintiffs allege have not been completed.  The Court understands Plaintiffs' position to be that all parties to the Settlement Agreement understood that Mosaic was to complete all earth-moving operations incident to reclamation within the Control Area Easement in accordance with the permits granted and in existence at the time of the Settlement Agreement.  The Court notes the provisions of  Paragraph 8 of the Closing Agreement, understands that the Conceptual Reclamation Plan approved by the FDEP included a specific timetable.

Case No. 8:11-CV-1093-T-17TBM

Under Florida law, time is of the essence where an agreement specifies it, where such may be determined from the nature of the subject matter of the contract, where treating time as non-essential would produce a hardship or where notice has been given to a defaulting party requiring the contract to be performed within a stated time, which must be a reasonable time according to the circumstances.  Sublime, Inc. v. Boardman's Inc., 849 So.2d 470, 471 (Fla. 4th DCA 2003).

The scope of the Control Area Easement,  was established in the Agreement between Agrifos Mining, L.L.C., Bedrock Holdings, L.L.C. and IMC Phosphates Company, Book 5188, Page 2241, Polk County Official Records, as limited by the Partial Release of IMC Control Area Easement, Book 7027, Page 347, Polk County Official Records, of which the Court takes judicial notice.  Based on the IMC Control Area Easement Agreement, the scope of the easement including mining and reclamation activities.  The IMC Control Area Easement Agreement further provides:

> 7.  Covenants to Run with the Land.  The easements and rights set forth herein shall run with title to the Control Area and shall be binding upon any and all persons having any ownership interest in the Control Area.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

Defendant Mosaic, as successor to IMC, has succeeded to IMC's rights to the Control Area Easement.  The Closing Agreement is an integrated contract which was negotiated between parties who were represented by counsel.  The Closing Agreement includes the parties' agreement that the Termination and Release Agreement become effective upon the completion of Defendant Mosaic's earth-moving operations within the Control Area Easement, an event which has not yet occurred; therefore, the Easement continues.   The Court now understands the time at which  Plaintiffs contend that Plaintiffs withdrew their consent for Defendant Mosaic to complete earth-moving activities, but this has not resulted in a plausible count for trespass within the Control

Case No. 8:11-CV-1093-T-17TBM

Area Easement that states a claim.  The effect of the provision in the Closing Agreement as to when the Termination and Release of Control Area Easement is to be effective means that, pursuant to the Control Area Easement, Defendant Mosaic is acting within the scope of the Easement in continuing to perform reclamation activities. Since Plaintiffs are relying on Section 8 of the Closing Agreement, and Plaintiff contend that Defendant did not complete requirements under the FDEP Plan, Plaintiffs may have another type of claim.

After consideration, the Court **grants** Defendant's Motion to Dismiss Count XIII with prejudice as to the trespass theory.  In the event that Plaintiffs want to assert another type of claim, Plaintiffs shall seek leave to file an amended complaint within fourteen days.

D.  COUNT XVI - Negligent Misrepresentation

In order to be actionable, a suit for misrepresentation must contain the following elements: 1) misrepresentation of a material fact; 2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; 3) the representor must intend that the representation induce another to act on it; 4) injury must result to the party acting in justifiable reliance on the misrepresentation.   Atlantic Nat'l Bank of Florida v. Vest, 480 So.2d 1328, 1331 (Fla. 2d DCA 1985, rev. denied, 491 So.2d 281 (Fla. 1986) and 508 So.2d 16 (Fla. 1987).  A fact is material if, but for the alleged nondisclosure or misrepresentation, the complaining party would not have entered into the transaction.  Hauben v. Harmon, 605 F.2d 920 (5th Cir. 1979.  Under Florida law, a person is responsible for investigating information for himself and not relying on representations of an opposing party if a reasonable person in the position of the recipient would be expected to investigate. Gilchrist Timber Co.  v. ITT Rayonier, Inc., 696 So.2d 334 (Fla. 1997).

Case No. 8:11-CV-1093-T-17TBM

In the Second Amended Complaint, Plaintiffs allege that Defendant Mosaic, through Ron Hall and Jeff Dodson, made several oral representations to Plaintiffs' representatives, Thomas Mims and Mike Cotter, in Spring, 2008, that all wetlands on Parcel EE, Reclamation Program IMC-KC-BB(1) and uplands on Parcel EE, IMC-KC-HP-4 had been released by Florida's Bureau of Mining and Minerals Regulation. Plaintiffs further allege that Mosaic intended to induce Mims/Alafia, LLC to agree to the final boundary lines on Parcel EE by representing that the land within the boundary lines drawn by Mosaic did not include wetlands or uplands that had not been released, and that by so inducing Mims/Alafia, LLC, the property transferred to Mims/Alafia, LLC by Mosaic was of a substantially lower value than was represented.  Plaintiffs further allege that Defendant knew or reasonably should have known that the representations were false.

Plaintiffs further allege that Mims/Alafia, LLC reasonably relied to its detriment on the representations when it pursued development of a landfill and recycling processing plant on parcel EE transferred to Mims/Alafia, LLC under the Settlement Agreement (Closing Agreement).

Plaintiffs further allege that Defendant Mosaic's misrepresentations constitute intentional misconduct, and were willful, wanton, and/or in conscious disregard or indifference to the rights of Mims/Alafia, LLC, as a result of which Mims/Alafia, LLC has been damaged.

Defendant Mosaic argues that Defendant Mosaic conveyed Parcel EE to Mims/Alafia, LLC pursuant to the Closing Agreement, which released Mosaic from this claim.  Defendant Mosaic argues that the only exceptions to the release are for claims under the limited warranty of title contained in the special warranty deeds, claims under Paragraph 3 of the Closing Agreement, and claims under the Closing Agreement or certain written agreements executed by Mosaic.  Defendant Mosaic argues that the oral representations in Count XVI do not qualify for any of these exceptions, and that

11

Case No. 8:11-CV-1093-T-17TBM

whether the Florida Bureau of Mining and Minerals Regulation released wetlands or uplands on Pacel EE relates to Parcel EE's physical or environmental condition, merchantability and fitness.  Defendant Mosaic requests dismissal with prejudice.

Plaintiffs respond that Defendant has mischaracterized the nature and language of Paragraph 3(c) of the Closing Agreement, and further argue that misrepresentation relates to the administrative status of certain wetlands and uplands with Florida's Bureau of Mining and Materials Regulation, which is not a warranty, and which does not relate to the physical or environmental condition of the property.

The Closing Agreement provides:

2.  On the Closing Date, Mosaic is conveying to Mims/Alafia certain properties identified for convenience as Parcel AA, Parcel EE, Parcel GG, and Parcel HH.   The aforesaid Parcels are more particularly described in the special warranty deeds being delivered by Mosaic to Mims/Alafia on the Closing Date.  For documentary stamp tax and title insurance purposes, the parties have agreed to allocate the following values to the Parcels being conveyed by Mosaic to Mims/Alafia:

| Parcel | Acreage | Amount Per Acre | Total Value |
|--------|---------|-----------------|-------------|
| ..... | | | |
| EE | 2,012,557 | $1,000/acre | $2,012,557 |
| .... | | | |

14.  This Closing Agreement has been negotiated between the parties who are experienced in commercial real estate transactions.  Accordingly, this Closing Agreement shall not be construed against either party as the drafter of the Closing Agreement in the event of any litigation with respect to it.  This Closing Agreement shall in all respects be interpreted, enforced and governed by and under the laws and judicial decisions of the State of Florida.

....

12

Case No. 8:11-CV-1093-T-17TBM

> 16.  This Closing Agreement constitutes the entire and complete
> agreement between the parties hereto and supersedes any prior oral or
> written agreements between the parties with respect to the matters set
> forth herein, including, without limitation, the MOU.  The parties further
> acknowledge that all of the terms, provisions, obligations, and
> requirements contained in the MOU have been satisfied, except for the
> specific obligations of the parties at the closing (including any documents
> being held in escrow).

The parties entered into the MOU and subsequent Closing Agreement after full discovery and a non-jury trial in Case No. 8:05-CV-2271-T-26EAJ, in which all parties were represented by experienced counsel.  The Closing Agreement reflects terms negotiated by counsel and approved by the parties.   In Count XVI Plaintiffs assert a claim for negligent misrepresentation as to the value of Parcel EE, but, given the parties' adversarial relationship, this is not a factual scenario in which Plaintiffs could justifiably rely on prior oral representations.  After consideration, the Court **grants** Defendant's Motion to Dismiss with prejudice in part, as to  alleged misrepresentations as to Parcel EE which caused Plaintiffs to accept a settlement term involving  property allegedly worth substantially less than was represented.

In Count XVI, Plaintiffs allege that Plaintiffs reasonably relied to their detriment on Defendant's alleged negligent misrepresentations in pursuing development of Parcel EE.  The issue of reasonable reliance on prior oral representations when later pursuing development of Parcel EE is not an issue that can be resolved at this stage of the proceedings.   After consideration, the Court **denies** Defendant's Motion to Dismiss in part.  Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss is **granted** in part and **denied** in part.  The Motion to Dismiss is **granted** as to Count XIII,  without prejudice to file amended complaint based on a **different theory** within fourteen days.  The Motion to Dismiss with prejudice is **granted** in part as to Count XVI, as to alleged negligent misrepresentations which caused Plaintiffs to accept a settlement term as to property

13

Case No. 8:11-CV-1093-T-17TBM

which was worth substantially less than the agreed value, and **denied** as to alleged negligent representations on which Plaintiffs reasonably relied to their detriment in pursuing development of Parcel EE.


      **DONE and ORDERED** in Chambers, in Tampa, Florida on this  27th day of September, 2012.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE


Copies to:
All parties and counsel of record